*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PETER THOMAS BRINKEY,

        Defendant-Appellant.

FOR PUBLICATION
February 14, 2019
9:00 a.m.

No. 342419
Macomb Circuit Court
LC No. 2016-004316-FH

Before: SWARTZLE, P.J., and MARKEY and RONAYNE KRAUSE JJ.

SWARTZLE, P.J.

For a valid plea agreement, it is axiomatic that there must be an actual agreement on the essential features of the plea. When there are multiple proposed plea agreements and hearings, as here, reference to a "prior plea" will likely be ambiguous and require some clarification on the record, unlike as here. Defendant, Peter Thomas Brinkey, pleaded guilty to several driving-related offenses, but the record confirms a lack of clarity with regard to essential sentencing features. As explained below, we reverse and remand for further proceedings.

## I. BACKGROUND

Defendant appeals by leave granted[1] his guilty plea convictions of operating while intoxicated (OWI), third offense, MCL 257.625(1); driving while license suspended (DWLS), second offense, MCL 257.904(1); and unlawful use of a license plate, MCL 257.256. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 2 to 25 years of

---

[1] *People v Brinkey*, unpublished order of the Court of Appeals, entered April 9, 2018 (Docket No. 342419).

imprisonment for the OWI conviction and one day, time served, for the DWLS and unlawful use of a license plate convictions.

Defendant does not contest any aspect of his first guilty plea on January 4, 2017, and at the first plea hearing both defendant's attorney and the prosecution stated that they believed all the requirements of MCR 6.302 had been met. At the first plea hearing, defendant pleaded guilty and the trial court told defendant that if the court was not going to comply with the sentence recommendation in his presentence investigation report (PSIR), the court would permit defendant to withdraw his guilty plea (the original agreement). After informing defendant that it would not comply with the sentence recommendation in his PSIR, the trial court permitted defendant to withdraw his guilty plea at the first sentencing hearing on April 20, 2017.

At the May 10, 2017 pretrial hearing, the trial court stated that the parties and the trial court had agreed to a *Cobbs*[2] agreement that the trial court referred to as a "*Cobbs* cap." The trial court informed defendant that the *Cobbs* cap would prevent defendant's minimum sentence from exceeding two years. Defendant then pleaded guilty at the second plea hearing on June 7, 2017. At the second plea hearing, however, the trial court simply asked defendant if he "want[ed] to reinstate [his] prior plea." Defendant responded, "Yes, with the understanding that I could get an updated PSI" and the trial court agreed that defendant could get a new PSIR. At no point after the first plea hearing did the trial court ever inform defendant of his rights again and, importantly, at the second plea hearing the phrase "prior plea" was never defined. There was also no discussion at the second plea hearing about the *Cobbs* cap.

At the second sentencing hearing on June 27, 2017, as soon as the trial court issued defendant's sentence, defendant stated that he wanted to withdraw his plea because the trial court "didn't agree with the sentence, with the recommendation." When the trial court stated that defendant requested a two-year *Cobbs* agreement, defendant replied that he "never pled guilty to this." The trial court disagreed and denied defendant's subsequent motion to withdraw. This appeal followed.

## II. ANALYSIS

On appeal, defendant argues that the trial court abused its discretion by denying his motion to withdraw his guilty plea. This Court reviews for abuse of discretion a trial court's ruling on a motion to withdraw a plea. *People v Pointer-Bey*, 321 Mich App 609, 615; 909 NW2d 523 (2017). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (cleaned up). Furthermore, this Court reviews the interpretation of court rules de novo. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016).

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

## A. PLEA AGREEMENTS

While there is "no absolute right to withdraw a guilty plea once the trial court has accepted it," a defendant, "may move to have his or her plea set aside on the basis of an error in the plea proceedings." *Pointer-Bey*, 321 Mich App at 615 (cleaned up). "[A] motion to withdraw a guilty plea after sentencing is governed by MCR 6.310(C)." *Blanton*, 317 Mich App at 118. In relevant part, MCR 6.310(C)(4) states:

> If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.

"In other words, under MCR 6.310(C), a defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process." *Blanton*, 317 Mich App at 118 (cleaned up).

"Guilty- and no-contest-plea proceedings are governed by MCR 6.302." *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Strict compliance with MCR 6.302 is not essential. *People v Plumaj*, 284 Mich App 645, 649; 773 NW2d 763 (2009). Our Supreme Court has adopted a doctrine of substantial compliance, and whether a particular departure from the requirements of MCR 6.302 justifies or requires reversal depends on the nature of the noncompliance. *Id*. Automatic invalidation of a plea due to a violation of MCR 6.302 is only required if the defendant establishes "that the waiver was neither understandingly nor voluntarily made, not merely that the trial court failed to strictly comply with MCR 6.402(B)." *Id*. at 651 (cleaned up).

> To ensure that a guilty plea is accurate, the trial court must establish a factual basis for the plea. In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea. The penalty to be imposed is the most obvious direct consequence of a conviction. Therefore, MCR 6.302(B)(2) requires the trial court to advise a defendant, prior to the defendant's entering a plea, of the maximum possible sentence for the offense and any mandatory minimum sentence required by law. [*Pointer-Bey*, 321 Mich App at 616 (cleaned up).]

"[B]ecause the understanding, voluntary, and accurate components of MCR 6.302(A) are premised on the requirements of constitutional due process, a trial court may, in certain circumstances, be required to inform a defendant about facts not explicitly required by MCR 6.302." *Blanton*, 317 Mich App at 119 (cleaned up). Furthermore, "[w]hen a defendant is not fully informed about the penalties to be imposed, there is a clear defect in the plea proceedings because the defendant is unable to make an understanding plea under MCR 6.302(B)." *Id*. (cleaned up). Finally, "[a] plea that is not voluntary and understanding violates the state and federal Due Process Clauses." *Id*. (cleaned up).

-3-

*Cobbs* agreements, when made, are related to guilty pleas. A *Cobbs* agreement is an agreement in which a defendant agrees to plead guilty in reliance on the trial court's preliminary evaluation of the sentence to be imposed. *Cobbs*, 443 Mich at 283. Under a *Cobbs* agreement a defendant is permitted to withdraw his or her guilty plea "in the event that the trial court determines that it must exceed the preliminary evaluation." *People v Fonville*, 291 Mich App 363, 369 n 3; 804 NW2d 878 (2011). MCR 6.302 is silent on *Cobbs* agreements. See MCR 6.302.

In *Plumaj*, 284 Mich App at 649, this Court established that strict compliance with MCR 6.302 is not essential. Specifically, *Plumaj* dealt with a defendant who pleaded guilty and nolo contendere to multiple offenses. *Id*. at 646-647. At the plea hearing, the trial court did not place the defendant under oath. Relying on this error, the defendant moved to withdraw his pleas. *Id*. at 647. The trial court granted the defendant's motion and set aside his pleas because the defendant was not placed under oath at his plea hearing. *Id*. at 647. This Court reversed, holding that strict compliance with MCR 6.302 is not essential to ensure the validity of a plea and that, while the oath requirement is an aspect of MCR 6.302, the analysis of whether a plea should be set aside should instead hinge on "the nature of the noncompliance" and on whether the defendant's plea was "understandingly, knowingly, voluntarily, and accurately made." *Id*. at 649, 651-652. Thus, in *Plumaj*, this Court held that, although strict compliance with MCR 6.302 is not essential, a defendant's plea must always be understanding, voluntary, and accurate.

In *People v Kosecki*, 73 Mich App 293; 251 NW2d 283 (1977), the defendant pleaded guilty on March 7, 1975, and was subsequently permitted to withdraw his guilty plea on the day of sentencing, March 21, 1975. *Id*. at 294. The defendant withdrew his guilty plea because the defendant's attorney had doubts that a factual basis to support the defendant's plea had been established at the original plea taking. *Id*. Later that same day, however, the defendant requested to reinstate his guilty plea. *Id*. On appeal, the defendant sought to withdraw his second guilty plea, arguing that he was not properly informed of his constitutional rights when he made his second guilty plea. *Id*. at 297. This Court noted, however, that the defendant admitted and the record confirmed that the defendant was properly informed of his constitutional rights when he made his first guilty plea on March 7, 1975. *Id*. Importantly, while the trial court "did not again go through the rights waived before accepting defendant's retendered plea, defendant's counsel stated, with defendant's agreement, that he had gone over these rights a number of times with defendant." *Id*. Because only two weeks had passed between the defendant's first and second guilty pleas, there was "no indication that defendant offered his original plea in ignorance of its consequences." *Id*. at 298. Accordingly, this Court affirmed the defendant's plea-based conviction. *Id*.

## B. CONFUSION APPARENT FROM THE RECORD

As in both *Plumaj* and *Kosecki*, defendant initially pleaded guilty before the trial court permitted him to withdraw his guilty plea. Unlike *Plumaj* and *Kosecki*, however, defendant's first guilty plea was controlled by the original plea agreement while, at least in the trial court's opinion, his second guilty plea was controlled by the *Cobbs* agreement. Although the trial court clarified the terms of the *Cobbs* agreement when defendant chose to reinstate his "prior plea" at the second plea hearing, what defendant and the trial court each meant by the phrase "prior plea" was never addressed. Furthermore, at the second plea hearing the trial court also failed to inform

defendant of his rights, as it had properly done at the first plea hearing. Thus, like in *Plumaj*, the trial court failed to comply strictly with the requirements of MCR 6.302. Because strict compliance with MCR 6.302 is not essential, however, whether defendant's second guilty plea should be set aside hinges on the nature of the trial court's noncompliance with the requirements of the court rule and whether defendant's second guilty plea was understandingly, knowingly, voluntarily, and accurately made. See *Plumaj*, 284 Mich App at 649-652.

While *Kosecki* can provide guidance here, it differs in one crucial aspect from this case. In *Kosecki* the sentencing conditions to which the defendant agreed did not change between his first and second guilty pleas. In contrast, when defendant in this case initially pleaded guilty it was under the original agreement; when defendant pleaded guilty the second time, the trial court's understanding was that the original agreement had no effect on defendant's second guilty plea and that the *Cobbs* cap controlled the terms of defendant's second guilty plea. The trial court failed to ensure that defendant knew that the *Cobbs* cap, not the original agreement, controlled his sentence after his second guilty plea. Thus, this case differs from *Kosecki* because, while in *Kosecki* the defendant argued that he did not know the rights he was waiving by pleading guilty, here defendant argues that he did not know the conditions under which he pleaded guilty.

Defendant's confusion concerning the conditions under which he pleaded guilty is apparent from a review of the record. While the trial court clearly outlined the circumstances of the *Cobbs* cap at the pretrial hearing, no such clarity was provided at the second plea hearing. At the second plea hearing, the trial court simply asked defendant if he wished to reinstate his "prior plea." Although the trial court never explained what it meant by "prior plea," defendant's understanding of "prior plea" is apparent from his response. As soon as the trial court issued defendant's sentence, defendant stated that he wanted to withdraw his plea because the trial court "didn't agree with the sentence, with the recommendation." When the trial court stated that defendant requested the *Cobbs* cap, defendant replied that he "never pled guilty to this." Thus, it does not appear that defendant was fully aware of the direct consequences of his second guilty plea and, therefore, defendant's second guilty plea was not understandingly, knowingly, voluntarily, and accurately made. See *Pointer-Bey*, 321 Mich App at 616. Furthermore, the nature of the trial court's noncompliance is serious in nature in this case because it appears from the record before us that the trial court made no effort to ensure that defendant actually knew and understood that he was pleading guilty under the conditions established by the *Cobbs* cap instead of the conditions of the original agreement. See *Plumaj*, 284 Mich App at 649. Because defendant's second guilty plea was not understandingly, knowingly, voluntarily, and accurately made the trial court abused its discretion by denying defendant's motion to withdraw his guilty plea.

## III. CONCLUSION

The record in this case shows a lack of clarity with respect to essential features of the plea agreement, specifically the sentencing parameters. The trial court abused its discretion by denying defendant's motion to withdraw and, accordingly, we reverse and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Amy Ronayne Krause